IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 6, 2005

## BEN MILLS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27225      James C. Beasley, Jr., Judge**

_____

**No. W2005-00480-CCA-R3-PC - Filed January 5, 2006**

_____

The petitioner, Ben Mills, appeals the denial of his petition for post-conviction relief from his first degree murder, aggravated robbery, and attempted first degree murder convictions, arguing that the post-conviction court erred in finding that trial counsel was not ineffective for failing to request a jury instruction on voluntary intoxication. Having reviewed the record, we conclude that the petitioner has failed to meet his burden of showing by clear and convincing evidence that he was prejudiced as a result of any alleged deficiency in counsel's representation. Accordingly, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Ben Mills.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Duffin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On December 7, 1998, the petitioner was convicted by a Shelby County Criminal Court jury of one count of first degree premeditated murder, one count of first degree felony murder, one count of aggravated robbery, and two counts of attempted first degree murder, for which he received an effective sentence of life plus fifteen years. State v. Ben Mills, No. W1999-01175-CCA-R3-CD, 2002 WL 925260, at *1 (Tenn. Crim. App. May 3, 2002), perm. to appeal denied (Tenn. Nov. 15, 2004).

The evidence presented at the petitioner's trial showed that early on the morning of April 12, 1995, the petitioner and a codefendant, Ashley Nesbitt, went to a Memphis apartment where a party was taking place, knocked on the door, and, when no one answered, pushed their way inside uninvited. Id. at **1-2. Upon entering the apartment, the petitioner and Nesbitt first inquired if anyone had any drugs to sell. Id. When everyone present answered in the negative, the men turned as if to leave but then spun around, pulled guns, and demanded that those inside drop their valuables onto the floor. Id. As the valuables were being dropped, the petitioner and Nesbitt began shooting, striking the victim, who later died of his injuries. Id. at *1.

One witness testified that she saw Nesbitt bent over the victim's body picking up valuables from the floor. Id. at *2. Another witness saw the petitioner and Nesbitt flee from the apartment to a car outside, where a third armed man sat waiting. Id. at *1. Testimony from several different witnesses established that the petitioner and Nesbitt were wearing different clothing when they were arrested a short time after the shooting. Id. at **1-2. Yet another witness for the State, Carl Turner, testified that the petitioner had been to the apartment the night before asking to buy drugs. Id. at *2. Turner said that the petitioner appeared to be under the influence of cocaine at the time of the shooting and that the first shot the petitioner fired was toward the ceiling. Id. On cross-examination, he conceded he had told defense investigators that a man who was present in the apartment, whom he knew as "Sean," or "Four Four," had a .44 Magnum which he had fired at Nesbitt when the shooting started. Id. Turner explained, however, that he had not seen the weapon himself but instead had been told by another man that Sean had fired a weapon during the robbery. Id.

The petitioner raised three issues on direct appeal: whether the evidence was sufficient to sustain the convictions; whether the trial court erred by not instructing on all the lesser-included offenses of felony murder; and whether the trial court erred by not instructing on voluntary intoxication. Id. at *1. This court affirmed the convictions on appeal but modified the judgment to reflect that the petitioner's conviction for felony murder was merged into his conviction for premeditated murder. Id. With respect to the issue of whether the trial court should have instructed the jury on voluntary intoxication, we noted that "[w]hile the issue may have been fairly raised, the [petitioner] did not request the instruction . . . and did not include the issue as grounds in his motion for new trial." Id. at *8. We concluded, therefore, that the trial court's failure to issue the instruction did not rise to the level of plain error. Id. Thereafter, the petitioner filed a *pro se* Rule 11 application for permission to appeal to the supreme court, which was dismissed as untimely.

On March 24, 2003, the petitioner filed a *pro se* petition for post-conviction relief, alleging, among other things, that he was denied the effective assistance of counsel. Following the appointment of post-conviction counsel, the petitioner filed an amended petition on September 18, 2003, alleging that trial counsel was ineffective for, among other things, failing to request the jury instruction on voluntary intoxication and failing to raise the fact the trial court did not instruct on voluntary intoxication as an issue in his motion for new trial. The petitioner further alleged that appellate counsel was ineffective for failing to file a Rule 11 application for permission to appeal to the supreme court and for providing the wrong deadline for the application to be filed.

At the April 2, 2004, evidentiary hearing, the petitioner testified that he was under the influence of cocaine at the time of the offenses. He recalled that trial counsel had asked him if he had been under the influence of an intoxicant when he committed the crimes, but he could not recall what answer he had given counsel. The petitioner testified that appellate counsel had sent him a letter informing him that he was withdrawing from his case. The petitioner indicated that, in that letter, appellate counsel had provided him with the deadline for filing his *pro se* Rule 11 appeal. He said, however, that when he tried to file his appeal within that deadline he learned that appellate counsel had given him the wrong date and that his time for filing had already expired.

Appellate counsel testified that approximately 99% of his practice consisted of criminal defense and estimated he had handled between fifteen and twenty-five murder cases during his career. He confirmed that trial counsel did not raise the trial court's alleged errors in jury instructions in the motion for a new trial, which meant that appellate counsel had to request that those issues be reviewed under the more stringent plain error standard. Appellate counsel identified the letter he had sent to the petitioner informing him that he was withdrawing from representation. He acknowledged he had erroneously told the petitioner that the sixty-day period in which to file an application for permission to appeal to the supreme court began to run on May 3 and expired on July 26.

On cross-examination, appellate counsel testified he had not thought he would prevail on the voluntary intoxication issue. He stated that in his experience it was hard to get jurors to feel sympathy for a defendant based on a claim of voluntary intoxication. Nonetheless, he had believed that an instruction on voluntary intoxication was required under the evidence and the law and said he would have requested one had he been handling the case.

Trial counsel, called as a witness by the State, testified that he was licensed to practice law in Oklahoma in 1971 and became licensed to practice in Tennessee in 1978. He said he practiced law "[s]ome" and had handled "a few" murder trials. He stated he had taken over the petitioner's case from another lawyer, who had done a "meticulous job" on the motions. Trial counsel testified that he added some motions of his own after taking over the case and that he believed he had argued either fifty-three or fifty-six motions on one Friday afternoon.

Although trial counsel's testimony on this topic was not entirely clear, he appeared to indicate that he had not had many conversations with the petitioner prior to arguing the motions but that he was able to interview him a number of times after the motions. Before divulging the substance of those conversations, trial counsel requested that the post-conviction court instruct him about his "duties under the attorney-client privilege." When told it was the court's position that the petitioner's ineffective assistance of counsel claim made "any communications or any dealings along those lines . . . open for discussion," trial counsel informed the court that the attorney-client privilege was "really very important" to him, that he did not like to violate it, and that he had been "unable to get a hold of the Board of Professional Responsibility" and would follow the post-conviction court's advice. Trial counsel then testified that the petitioner's main defense was that he had been involved in a "failed drug deal" which had ended in a "shootout," with gunfire exchanged

on both sides. Trial counsel said the physical evidence, which showed bullet holes on both ends of the apartment, corroborated that claim and he had put on an expert witness to that effect.

Trial counsel testified that none of the evidence he had at trial, including the information he had from the petitioner, indicated that the petitioner was under the influence of any intoxicant at the time of the offenses. He acknowledged, however, that one of the State's witnesses had testified that the petitioner's eyes had been "jiggling or something like that." Asked why he had not raised the court's failure to instruct on voluntary intoxication as an issue in his motion for a new trial, trial counsel replied that he had been in possession of information at the time he drafted the motion which made him believe that it would be both intellectually dishonest and unethical for him to raise voluntary intoxication as an issue before the court.

After being asked on cross-examination to read aloud from a portion of the trial transcript containing Carl Turner's testimony, trial counsel acknowledged that Turner had testified that he believed the petitioner was on cocaine at the time of the offenses. Trial counsel further acknowledged he had cross-examined Turner about that statement in an attempt to show that the petitioner had not, in fact, been under the influence of cocaine. Counsel explained he had believed that a defense of voluntary intoxication was inconsistent with his defense strategy of attempting to prove it had been a case of a "drug-deal-gone-bad." He testified he asked the petitioner if he had been "high" and, to the best of his recollection, the petitioner answered that he had not. Trial counsel stated he thought it would have been unethical and intellectually dishonest for him to have requested a jury instruction that he knew was not truthful and that did not have an adequate foundation in fact.

On April 30, 2004, the post-conviction court entered an order granting the petitioner a delayed appeal to the supreme court due to evidence that the petitioner had relied on the erroneous deadline given by appellate counsel for filing his Rule 11 application. On November 15, 2004, our supreme court denied the petitioner's delayed application for permission to appeal, and on February 11, 2005, the post-conviction court entered an order denying the petition for post-conviction relief. Among other things, the post-conviction court noted that the overwhelming proof at trial had been that it was a planned robbery which resulted in the death of the victim; that there was no evidence as to the degree of intoxication, if any, under which the petitioner had operated or that his alleged intoxication prevented him from forming the plan for the robbery; and that trial counsel had testified that his defense theory had not included a claim of intoxication but instead had hinged on proving that it had been a drug deal that had gone wrong, forcing the petitioner to shoot in self-defense. The post-conviction court's order states in pertinent part:

> The defense theory was that this was a drug deal that went wrong and the defendant/petitioner was acting in self defense with the shooting occurred. [Trial counsel] testified that the only proof of any such impairment came from one witness who stated that the petitioner acted like he might have been on cocaine. Trial counsel said he felt it would be unethical to request such a charge when his entire case and all his conversations with the petitioner were that he was not under the influence of anything. Their theory was that he was not under the influence. Because the issue

was not raised by trial counsel in the motion for a new trial it was reviewed on appeal under the plain error theory and was found wanting by the Court of Criminal Appeals. The petitioner is charged on a petition for post conviction relief with the burden of proving that "but for" such an omission by trial counsel the outcome of his trial might have been different. The proof at trial was overwhelming that this was a planned robbery and during the course thereof the victim was killed. No proof was offered that the degree of intoxication of the petitioner, if in fact at all, impaired or affected his ability to carry out the aggravated robbery which resulted in subsequent death for the victim. Based on trial counsel's testimony that it was their theory of the case that the petitioner was not under the influence and that said theory was based upon petitioner's own statements to trial counsel, this court is of the opinion that failure to request a jury instruction for voluntary intoxication was not ineffective representation by trial counsel and this issue has no merit.

Thereafter, the petitioner filed a timely appeal to this court, raising as his sole issue whether the post-conviction court erred in finding that trial counsel was not ineffective for failing to request the instruction on voluntary intoxication.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App.1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The petitioner contends that counsel's failure to request the instruction on voluntary intoxication resulted not from an informed trial strategy but instead from counsel's "complete misunderstanding of his role as an advocate." He argues that trial counsel failed to comprehend the difference between presenting perjured testimony and requesting a favorable jury instruction which may or may not have comported with counsel's version of the facts but which nonetheless was supported by the evidence presented at trial. The petitioner contends that, as such, counsel's decision not to request the jury instruction was unreasonable and constituted a deficiency in representation.

At the evidentiary hearing, trial counsel repeatedly stated that he believed it would have been both unethical and "intellectually dishonest" for him to request an instruction on voluntary intoxication when none of the information he had gathered about the case, including information from his client, supported such an instruction. The following exchange is illustrative:

THE COURT: Let me interrupt, just so I make sure I understand this train of thought. If you recall, [trial counsel], was it your point in cross examining this man [Turner] to try to prove that [the petitioner] was not under the influence of cocaine?

THE WITNESS: Well, Your Honor, if we have a defense of a drug-deal-gone-bad and if we have a defense [of] people shooting at our client and our clients attempting to save their life, then how can I possibly put in, number one, knowing it to be false, knowing it to be perjury, and, number two, logically that my client is high

-6-

on cocaine, when I'm trying to save him from a murder conviction. Because our only defense is this is a drug deal gone bad and that our clients were attacked.

THE COURT: So it was your position that your client was not under the influence of cocaine?

THE WITNESS: Absolutely. In fact, there were thirteen bullet holes -- fourteen bullet holes in the apartment, all over the apartment. It was clear that it was a gun fight. We had the former head of MPD homicide in there testifying that it was a gun fight. We had testimony about people jumping through plate glass windows, hiding in closets, bullets going everywhere. I can't possibly comprehend why I would want to say, number one, something that is perjurious and, number two, something that defeats the last chance my client has, and that is this was a gun fight of a drug deal that went bad.

Q.      Well, let's talk about that for a second. You say it's perjurious. Are you telling us today -- because I'm unclear -- did [the petitioner], in response to a question from you, say, [Trial counsel], I was not on cocaine. Did he tell you that?

A.      He never got on the stand, sir.

Q.      That's exactly my point, sir. Would you agree with this, that voluntary intoxication may negate the mental state as an element of the crime in first degree murder?

A.      As a black letter law, yes.

Q.      Would you further agree that Mr. Turner's testimony, that he appeared to be on cocaine, when Mr. Turner said that he had been around people on cocaine, was before the jury?

A.      Yes.

Q.      Well, how in the world would it have been perjury for you to argue, based on the state's proof, that a voluntary instruction on intoxication -- an instruction on voluntary intoxication would be warranted? How would that be perjury?

A.      Oh, I'm sorry if I used the word perjury on that. I think it's both unethical and intellectually dishonest when I know that my client was not on cocaine, at least according to my client, number one, and, number two, my client won't take the witness stand.

Q.      So your client told you, for the record now, that he was not on cocaine?

A.     In interviewing [the petitioner], I asked him when you went there, were you high? And the answer to me was, to the best of my recollection, this is years ago, no.

. . . .

Q.     [Trial counsel], let me ask you, you would agree that at a murder trial, or any trial for that matter, you're not required to reveal client-attorney secrets?

A.     That's why I was so concerned about testifying today. That's right. I don't like revealing secrets.

Q.     Absolutely. Now, if the State of Tennessee, in their case in chief, puts forth a witness that offers proof that your client was under the influence of an intoxicant, and we know that, under the law, influence of an intoxicant may negate . . . certain elements and mental state of certain crime[s], how would that be intellectually dishonest to ask the judge to instruct on that?

A.     First of all, I think it has been pointed out here that people who try cases understand that juries don't like that and don't buy it, number one. Second, I don't think it's ethical and I think it's intellectually dishonest to ask for an answer when you know that -- to ask for an instruction when you know it's not a truthful instruction with a factual foundation that's adequate.

Based on the above-quoted exchange, we agree with the petitioner that trial counsel apparently failed to appreciate the difference between knowingly using perjured testimony or false evidence and requesting a jury instruction which was fairly raised by the evidence. At the time of the petitioner's trial, Tennessee operated under the Code of Professional Responsibility. Disciplinary Rule 7-102, "Representing a Client Within the Bounds of the Law," provided as follows:

(A) In the representation of a client, a lawyer shall not:

(1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

(3) Conceal or knowingly fail to disclose that which the lawyer is required by law to reveal.

(*4*) *Knowingly use perjured testimony or false evidence.*

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.

(7) Counsel or assist the client in conduct that the lawyer knows to be illegal or fraudulent.

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

Tenn. Sup. Ct. R. 8, DR 7-102 (1998) (emphasis added). In addition, Disciplinary Rule 7-106, governing "Trial Conduct," provided in pertinent part:

(C) In appearing in a professional capacity before a tribunal, a lawyer shall not:

(1) State or allude to any matter that the lawyer has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

Tenn. Sup. Ct. R. 8, DR 7-106 (1998).

Tennessee Code Annotated section 39-11-503(a) provides that while intoxication is not in itself a defense to prosecution, a defendant's intoxication, whether voluntary or involuntary, is admissible in evidence if it is relevant to negate a culpable mental state. However, as we noted in our direct appeal opinion:

"Proof of intoxication alone is not a defense to a charge of committing a specific intent crime nor does it entitle an accused to jury instructions ...; there must be evidence that the intoxication deprived the accused of the mental capacity to form specific intent . . . . The determinative question is not whether the accused was intoxicated, but what was his mental capacity."

Ben Mills, 2002 WL 925260, at *8 (quoting Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979)). A defendant has a constitutional right to an instruction on voluntary intoxication if fairly raised by the proof. See State v. Williamson, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995) (citations omitted).

The record reveals that Turner, who was called as a witness by the State, testified that he had been around a number of individuals who used cocaine. He said he believed the petitioner was under the influence of cocaine at the time of the offenses because his eyes were "real shiny" and he "wasn't

just really focused on whatever he caught himself doing that night." Thus, evidence of the petitioner's intoxication was fairly raised by the State through the testimony of its own witness. Moreover, Turner's testimony suggested not only that the petitioner was on cocaine but also that it impaired his ability to focus on what he was doing at the time of the offenses. Since the evidence of intoxication was raised by a State witness, trial counsel would have been neither "knowingly using perjured testimony or false evidence" nor alluding to a matter that he had no reasonable basis to believe would be "relevant to the case" or that would not "be supported by admissible evidence" by requesting an instruction on voluntary intoxication. This is true regardless of whether the petitioner had specifically denied using cocaine in his interviews with counsel. Trial counsel's concern that it would have been unethical for him to have requested the jury instruction appears to have been based on a misunderstanding of the law and his ethical responsibilities as an attorney. Lending support to this conclusion is the concern that trial counsel repeatedly expressed at the evidentiary hearing that his testimony would violate the attorney-client privilege, showing counsel's apparent failure to recognize that the petitioner had waived the attorney-client privilege by his claim of ineffective assistance. Under such circumstances, trial counsel's decision not to request the jury instruction on voluntary intoxication on the basis that it would be unethical to do so was unreasonable.

Trial counsel also testified, however, that he believed that an instruction on voluntary intoxication would have undermined his trial strategy of attempting to prove that the shooting occurred in self-defense. Given the defense's position that the petitioner went to the apartment to purchase drugs, we find it difficult to understand why counsel believed so strongly that an instruction on voluntary intoxication would have defeated "the last chance" the petitioner had to prove that it "was a gun fight of a drug deal that went bad." Nonetheless, trial counsel, who was in the best position to know, believed that voluntary intoxication would be incompatible with his trial strategy of attempting to show that the shooting occurred in self-defense, and we decline to second-guess that decision. See Strickland, 466 U.S. at 690, 104 S. Ct. at 2066; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see also James Rines v. State, No. 03C01-9606-CC-00210, 1997 WL 33654, at *4 (Tenn. Crim. App. Jan. 28, 1997), perm. to appeal denied (Tenn. June 2, 1997) (concluding that trial counsel was not deficient for failing to develop defense of intoxication when she explained that defenses of intoxication and self-defense were incompatible in the case). The petitioner has not, therefore, met his burden of proving that counsel was deficient for failing to request the voluntary intoxication instruction.

The petitioner has also failed to establish that he was prejudiced as a result of counsel's alleged deficiency in representation. To establish prejudice, the petitioner has the burden of proving by clear and convincing evidence a reasonable probability that the outcome of the trial would have been different had trial counsel requested the voluntary intoxication instruction. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. As the post-conviction court observed, the State presented overwhelming evidence to show that the crimes had been executed in accordance with a plan formulated in advance of the time when the petitioner entered the apartment. We summarized and analyzed the evidence against the petitioner in the direct appeal opinion as follows:

-10-

The testimony at trial established that the [petitioner] and Nesbitt possessed guns and fired several shots in the direction of the unarmed occupants of the Turners' apartment. There was evidence of an armed lookout and getaway car driver waiting in the parking lot at the time of the shooting. This suggests advanced planning of the crime. Barbara Turner saw a calm Nesbitt standing over the fallen victim taking money from the floor. While the defense established that Carl Turner had heard that a man named Sean had retrieved his gun and fired at Nesbitt, Turner explained that he had not seen Sean in possession of a weapon and had based his comment on hearsay from a man identified as "Nausea." Neither Sean nor "Nausea" testified at trial. All other witnesses claimed that only the [petitioner] and Nesbitt were armed and fired shots. The testimony also established that, when they were arrested shortly after the shooting, both the [petitioner] and Nesbitt were wearing different clothes than they wore while at the apartment. In addition, no weapons were found in the car, indicating that the weapons had been disposed of after the shooting. When the defendants were stopped by officers a short time later, Nesbitt was driving the car. The jury rejected the defense theory that any other individual could have fired the fatal shot, as was their prerogative. In our view, the evidence was sufficient to support convictions for both felony murder and premeditated murder.

Ben Mills, 2002 WL 925260, at *4 (footnote omitted).

In the face of such evidence, which showed how the petitioner engaged in advanced planning for the crimes and took steps immediately afterwards to conceal his involvement in the crimes, we are unpersuaded that there is a reasonable likelihood that the jurors would have reached different verdicts had the instruction on voluntary intoxication been given. The level of preparation and planning evidenced in the case belies any claim of the petitioner's not having been capable of forming the requisite specific intent for the offenses.

## CONCLUSION

Based on our review of the record, we conclude that the petitioner has not met his burden of demonstrating he was denied the effective assistance of trial counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

ALAN E. GLENN, JUDGE

-11-